UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PAMELA BROOKS,**<br>Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-7736** |
| **UNITED STATES OF AMERICA,**<br>Defendant | **SECTION: "E" (2)** |

## SUPPLEMENTAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

On November 14, 2019, the Court issued its Findings of Fact and Conclusions of Law.[1] The Court ordered the parties to file supplemental expert reports to assist the Court in determining the amount of past medical expenses, future medical expenses, and future lost wages due the Plaintiff.[2] On December 9, 2019, Plaintiff and Defendant filed their supplemental expert reports.[3,4]

## ANALYSIS

### I. Past Medical Expenses

The parties stipulated to past medical expenses in the amount of $49,176.72, as reflected in Trial Exhibit 27, but the Defendant did not stipulate all those amounts were caused by the accident.[5] In its Findings of Fact and Conclusions of Law, the Court determined the percentages of Plaintiff's past medical expenses caused by the accident.[6] The Court ordered the parties to file supplemental expert reports from their respective life care planners and economists, based on the Court's rulings, specifying:

---

[1] R. Doc. 84.
[2] *Id.* at 40.
[3] R. Docs. 85 and 86.
[4] R. Docs. 87-1 and 87-2.
[5] R. Doc. 84 at 36.
[6] *Id.*

1

All damages must be attributed to specific bodily injuries and may not be grouped together. Further, the supplemental lifecare plans should include a discussion of past medical expenses and should specify which portions of the past medical expenses are attributable to each injury.[7]

The Government's expert lifecare planner, Hegwood & Company, LLC, Professional Rehabilitation Counselors ("Hegwood"), determined Plaintiff's past medical expenses caused by the accident totaled $25,196.29.[8] Hegwood explained its methodology for determining this amount as follows:

> Based on the Court's causation findings, Ms. Brooks is entitled to 20% of her past medical expenses related to her left and right knees; is entitled to the full amount of past medical expenses related to her right shoulder and lumbar spine; and is not entitled to any past medical expenses related to her cervical spine. In analyzing Trial Exhibit 27 and applying the finding, it was determined that Ms. Brooks is owed $25,196.29 in past medical expenses (Attachment A).[9]

Attachment A attributed past medical expenses to the various injuries caused by the accident, as directed by the Court.

The past costs listed in the report provided by Plaintiff's lifecare planner, Elizabeth B. Martin & Associates ("Martina"), fail to comply with the Court's order in two important regards. First, the Court ordered "[a]ll damages must be attributed to specific bodily injuries and may not be grouped together."[10] However, in multiple instances, Martina grouped bodily injuries together and provided no way for the Court to determine the amount of past medical expenses for each injury caused by the accident.[11] For instance, Martina attributed Plaintiff's $8,281.00 past medical expenses from November 3, 2016 to June 21, 2017 to her Southshore Physician visits relating to "Cervical/Lumbar/Bilateral

---

[7] *Id.* at 40.
[8] R. Doc. 87-1 at 2.
[9] *Id.*
[10] R. Doc. 84 at 40.
[11] R. Doc. 85 at 5-7.

2

Knees/Right Shoulder."[12] Second, it appears Martina did not reduce the past medical amounts related to Plaintiff's bilateral knee injuries by eighty percent,[13] despite the Court's holding that Plaintiff is entitled to only twenty percent of her past medical expenses related to her bilateral knee injuries.[14]

Hegwood correctly attributed specific past medical expenses to specific bodily injuries and reduced the past medical expenses related to Plaintiff's knee injuries by eighty percent.[15] Accordingly, the Court accepts the amounts in the Hegwood expert report. Plaintiff is awarded $25,196.29 in past medical expenses.

## II. Future Medical Expenses

Plaintiff's expert economist, Dr. Kenneth Boudreaux,[16] and Defendant's experts, Harold Asher and Jeffrey Meyers,[17] calculated Plaintiff's future medical expenses with respect to her bilateral knee injuries, right shoulder injury, and lumbar spine injury. All experts used a life expectancy of 24.14 years.[18] Boudreaux used a real discount rate of 0.00% to 0.47%.[19] Asher and Meyers used a real discount rate of 0.00%[20] The Court finds the discount rate used by Boudreaux is appropriate.

Boudreaux based his calculations of Plaintiff's future medical costs on the future medical costs included in the supplemental report filed by Martina (the "Martina Report")[21] whereas Asher and Meyers based their calculations of Plaintiff's future medical costs on the future medical costs included in the supplemental report filed by Hegwood

---

[12] *Id.* at 5.
[13] *Id.* at 5-7.
[14] R. Doc. 84 at 36.
[15] R. Doc. 87-1 at 4-5.
[16] R. Doc. 86 at 2.
[17] R. Doc. 87-2 at 5.
[18] R. Doc. 86 at 1; R. Doc. 87-2 at 3.
[19] R. Doc. 86 at 1.
[20] R. Doc. 87-2 at 3.
[21] R. Doc. 85.

(the "Hegwood Report").[22] Several of the future medical costs in the Martina Report differ from those in the Hegwood Report. Some of these differences are due to the fact that, although Hegwood derived many of the future medical costs from those included in the original Martina report and the amended Martina report admitted at trial,[23] Hegwood derived other future medical costs from "goodrx.com."[24] Martina derived the future medical costs included in her original and amended reports from invoices and quotations supplied by Plaintiff's treating physicians, Dr. Fred DeFrancesch, Dr. Marco Rodriguez, and Dr. Robert Bostick, as well as other sources.[25] Additional significant differences between the Martina Report and the Hegwood Report are discussed below.

### A. Left and Right Knees

The Court determined "Plaintiff is entitled to twenty percent of her future medical expenses related to her left and right knee injuries."[26]

In the original Martina report and the amended Martina report admitted at trial, Martina set forth the treatments related to Plaintiff's future medical expenses for her bilateral knee injuries.[27] In their supplemental reports, Martina and Hegwood each calculated the costs of these treatments, reducing the overall costs by 80%.[28] Martina determined Plaintiff's future one-time costs, including her knee replacement surgeries, will total $11,754.11 to $14,147.47 and her future annual costs will total $49.30 to $153.29.[29] Applying Plaintiff's 24.14 year-life expectancy to her annual costs, Plaintiff's

---

[22] R. Doc. 87-1.
[23] Trial Exhibits 16 and 25. Martina derived several of the future medical costs included in her original and amended reports from other sources, including quotations provided by other healthcare providers in the New Orleans area and, for future medication costs, www.walgreens.com and www.cvs.com.
[24] *See, e.g.*, R. Doc. 87-1 at 7.
[25] *See* Trial Exhibits 16 and 25.
[26] R. Doc. 84 at 37.
[27] Trial Exhibit 16 at pp. 14-20 and Trial Exhibit 25 at pp. 5-12.
[28] R. Doc. 85 at 3; R. Doc. 87-1 at 6-18.
[29] R. Doc. 85 at 3.

total future medical expenses related to her bilateral knee injuries as calculated by Martina total roughly $12,944.23 to $17,847.89, the midpoint of which is $15,396.06.[30] Hegwood determined Plaintiff's future medical expenses related to her bilateral knee injuries will total $12,360.45 to $16,262.26,[31] the midpoint of which is $14,311.35. The Court accepts the future medical costs as established by Martina.

Based on the Martina Report, Boudreaux calculated Plaintiff's future medical expenses related to her bilateral knee injuries will total $15,394.20.[32] The Court accepts Boudreaux's opinion on this matter.

Plaintiff is awarded future medical expenses related to her bilateral knee injuries in the amount of $15,394.20.

**B. Right Shoulder**

The Court determined "Plaintiff is entitled to future medical expenses related to her right shoulder for ongoing conservative treatment. Plaintiff is not entitled to any amount of future medical expenses for shoulder surgery."[33]

In the original Martina report and the amended Martina report admitted at trial, Martina set forth the treatments related to Plaintiff's future medical expenses for her right shoulder injury.[34] In their supplemental reports, Martina and Hegwood each calculated the costs of these treatments, excluding the costs of any treatments related to right shoulder surgery.[35] Martina determined Plaintiff will have no future one-time costs

---

[30] The Court obtained this figure by multiplying Plaintiff's future annual low and high costs by her life expectancy, 24.14, adding these sums to Plaintiff's future one-time low and high costs, and averaging the two figures, resulting in $15,396.06. This figure differs slightly from the "midpoint" determined by Boudreaux because Boudreaux discounted the amount to the present value.
[31] R. Doc. 87-1 at 18.
[32] R. Doc. 86 at 2.
[33] R. Doc. 84 at 37.
[34] Trial Exhibit 16 at pp. 14-20 and Trial Exhibit 25 at pp. 5-12.
[35] R. Doc. 85 at 4; R. Doc. 87-1 at 24-26.

5

related to her right shoulder injury and her future annual costs will total $196.48 to $549.05.[36] Applying Plaintiff's 24.14 year-life expectancy to her annual costs, Plaintiff's total future medical expenses related to her right shoulder injury as calculated by Martina total roughly $4,743.03 to $13,254.07, the midpoint of which is $8,998.54.[37]

Hegwood determined Plaintiff's future medical expenses related to her right shoulder injury will total $2,957.76 to $8,357.76,[38] the midpoint of which is $5,657.76. Hegwood reduced Plaintiff's costs for "Orthopedic Surgeon routine" by fifty percent because:

> According to the USDC Findings of Fact and Conclusions of Law dated 11/14/19, plaintiff is entitled to future medical expenses related to her right shoulder for ongoing conservative treatment, but not entitled to any future amount for shoulder surgery. For purposes of itemizing costs by anatomical pathology, 50% of each annual visit is attributed to her shoulder.[39]

While the Court did rule Plaintiff is entitled only to future medical expenses related to her right shoulder for conservative treatment,[40] there is no indication the "Orthopedic Surgeon Routine" cost is for shoulder surgery or for post-operative shoulder treatment. As a result, the fifty percent reduction was not justified. The Court accepts the future medical costs as established by Martina.

---

[36] R. Doc. 85 at 4.
[37] The Court obtained this figure by multiplying Plaintiff's future annual low and high costs by her life expectancy, 24.14, and then averaging the two figures, resulting in $8,998.54. This figure differs slightly from the "midpoint" determined by Boudreaux because, to determine the midpoint, Boudreaux did not simply multiply the annual costs by Plaintiff's life expectancy: "[w]here the Martina future medical cost estimates indicated ranges of cost, duration or frequency of care type, I have used the midpoint of such ranges." R. Doc. 86 at 2. In any event, there is no material difference between the Court's roughly-estimated midpoint of $8,998.54 and Boudreaux's calculated midpoint of $9,117.53.
[38] R. Doc. 87-1 at 18.
[39] *Id.* at 24.
[40] R. Doc. 84 at 37.

Based on the Martina Report, Boudreaux calculated the value of Plaintiff's future medical expenses related to her right shoulder injury will total $9,117.53.[41] The Court accepts Dr. Boudreaux's opinion on this matter.

Plaintiff is awarded future medical expenses related to her right shoulder injury in the amount of $9,117.53.

### C. Lumbar Spine

The Court determined "Plaintiff is entitled to future medical expenses relating to her lumbar spine, including the cost of one RFA per year for four years."[42]

In the original Martina report and the amended Martina report admitted at trial, Martina set forth the treatments related to Plaintiff's future medical expenses for her lumbar spine injury.[43] In their supplemental reports, Martina and Hegwood each calculated the costs of these treatments, including the cost of one radiofrequency ablations ("RFA") procedure per year for the next four years.[44] Martina determined Plaintiff's future one-time costs related to her lumbar spine injury, including the cost of her RFA procedures, will total $49,922.00 to $65,158.60 and her future annual costs will total $545.60 to $647.90.[45] Applying Plaintiff's 24.14 year-life expectancy to her annual costs, Plaintiff's total future medical expenses related to her lumbar spine injury as calculated by Martina total roughly $63,092.00 to $80,798.91, the midpoint of which is $71,945.45.

---

[41] R. Doc. 86 at 2.
[42] R. Doc. 84 at 37. The Court awarded Plaintiff a total of five years of lumbar spine RFAs. Because Plaintiff has already had one RFA this year, 2019, four RFAs remain.
[43] Trial Exhibit 16 at pp. 14-20 and Trial Exhibit 25 at pp. 5-12.
[44] R. Doc. 85 at 4; R. Doc. 87-1 at 19-23.
[45] R. Doc. 85 at 4.

It appears Martina made an error in calculating the one-time cost of "Interventional Pain Management Follow Up." In the original Martina report and the amended Martina report admitted at trial, Martina provided the cost of "Interventional Pain Management" will total $1,464.80 to $8,032.60 over ten years.[46] In her supplemental report, Martina repeated the one-time cost for follow as $1,464.80 to $8,032.60,[47] but the Court limited Plaintiff to four RFA procedures.[48] Because the Court has held Plaintiff is entitled only to the cost of one RFA procedure per year for the next four years, Plaintiff is accordingly entitled to only the cost of four follow up visits.

Hegwood determined Plaintiff's future medical expenses related to her lumbar spine injuries will total $29,203.53 to $59,912.04,[49] the midpoint of which is $44,557.78. Hegwood reduced Plaintiff's costs for "Physical Therapy – Routine" by 50% because:

> According to Ms. Martina's report of 10/8/19, Trial Exhibit 25, Dr. Rodriguez recommended this service for 8 sessions every 2 years for strengthening and maintenance for flare ups (lumbar & cervical spine), in their conference of 5/21/19. Based on review of records, Ms. Brooks has never undergone physical therapy since the [accident] of 10/31/16. She has undergone modality treatments of moist heat, TENS, ultrasound and deep tissue massage from 11/3/16 – 6/21/17, but not for strengthening. According to the USDC Findings of Fact and Conclusions of Law dated 11/14/19, she is not entitled to recovery of cervical spine care costs; therefore only 50% of PT is attributed to back.[50]

While the Court did rule Plaintiff is not entitled to future medical expenses related to her cervical spine,[51] there is no indication the "Physical Therapy – Routine" cost is for her cervical spine, and the reduction was not justified. The original and amended Martina

---

[46] Trial Exhibit 16 at p. 14 and Trial Exhibit 25 at p. 6.
[47] R. Doc. 85 at 4.
[48] R. Doc. 84 at 37.
[49] R. Doc. 87-1 at 23.
[50] *Id.* at 24.
[51] R. Doc. 84 at 37.

8

Reports simply state Dr. Rodriguez recommended physical therapy for "[s]trengthening and maintenance for flare ups."[52]

The most significant difference in the future costs with respect to Plaintiff's lumbar spine injuries as set forth in the Martina Report and the Hegwood Report concerns the cost of Plaintiff's RFAs. Martina determined the cost of Plaintiff's future four lumbar RFAs will total $48,000.00 to $56,640.00.[53] Martina obtained these figures from her original and amended reports, wherein she listed the cost of each lumbar RFA as $12,000.00 to $14,160.00.[54] Martina obtained the $12,000 figure was from an estimate given by Dr. DeFrancesch's office on April 2, 2019.[55,56] In contrast, Hegwood determined the cost of Plaintiff's future lumbar RFAs will total $20,000.00 to $33,273.80, based on a cost of $5,000.00 to $8,318.45 per RFA.[57] Hegwood derived the upper end of this range from the $8,318.45 invoice dated September 29, 2019 for the one RFA Dr. DeFrancesch has already administered to Plaintiff,[58,59] ***not*** the estimate provided by Dr. DeFrancesch's office on April 2, 2019. The $8,318.45 amount reflects the total cost associated with the RFA.[60] The Court finds the actual invoiced amount to be a more accurate reflection of Plaintiff's future lumbar RFA costs than the estimate, which was provided four months before the first RFA was administered. Using the invoiced amount, and accounting for the

---

[52] Trial Exhibit 16 at p. 16 and Trial Exhibit 25 at p. 8.
[53] R. Doc. 85 at 4.
[54] Trial Exhibit 16 at p. 19 and Trial Exhibit 25 at p. 11.
[55] Trial Exhibit 16 at p. 19 n.28, 23; Trial Exhibit 25 p. 11 n.23, 15.
[56] Martina obtained the $14,160.00 figure from a quote given by LA Health Solutions on June 27, 2019, Trial Exhibit 25 p. 11 n.23, 15, from which no physician has administered RFAs to Plaintiff.
[57] R. Doc. 87-1 at 22.
[58] *Id.* It appears these services were provided on September 5, 2019. See Trial Exhibit 27 at 806.
[59] Hegwood derived the lower end of this range from "Dr. Patrick Waring." R. Doc. 87-1. Dr. Waring's identity and qualifications are unknown to the Court.
[60] Trial Exhibit 27 at 806. The invoice includes charges for "established OV-detailed," "fluoroscopy," "INJ-facet/nerve lumbar," "INJ-2nd level fact/nerve lumbar," "radiofrequency," "radiofrequency-lumbar additional," "low osmolar contrast," "bupivacaine," "lidocaine HC1 1%," "special spinal needle," and "procedure tray." *Id.*

calculation error described above, Martina should have determined Plaintiff's future medical costs related to her lumbar spine to total roughly $47,487.70 to $52,613.14, the midpoint of which is $50,050.42.

The Plaintiff is awarded future medical costs related to her lumbar spine in the amount of $50,050.42

### III.  Future Lost Wages

To calculate Plaintiff's future lost wages, Boudreaux and Asher and Meyers used Plaintiff's demonstrated annual earnings of $47,458.50 as set forth in the Martina Report.[61] Boudreaux applied a real discount rate of 0.00-0.47%.[62] Boudreaux determined Plaintiff's future lost wages will total $6,946.57.[63] Asher and Meyers determined Plaintiff's future lost wages relating to her bilateral knee surgeries will total $4,746 and her future lost wages relating to her lumbar RFAs will total $2,190,[64] for an overall total of $6,936.00.

The Court accepts the future discounted lost wages as calculated by Boudreaux. Plaintiff is awarded future lost wages in the amount of $6,946.57.

## CONCLUSION

**IT IS ORDERED** that Plaintiff is entitled to judgment in the following amounts:[65]

- $25,196.29 in past medical expenses;
- $15,394.20 in future medical expenses related to her bilateral knee injuries;
- $9,117.53 in future medical expenses related to her right shoulder injury;

---

[61] R. Doc. 86 at 2; R. Doc. 87-2 at 2.
[62] R. Doc. 86 at 1.
[63] *Id.* at 2.
[64] R. Doc. 87-2 at 3.
[65] In the Findings of Fact and Conclusions of Law, the Court found Plaintiff is entitled to recover $50,000 in general damages. R. Doc. 84 at 39-40.

- $50,050.42 in future medical expenses related to her lumbar spine injury; and

- $6,946.57 in future lost wages.

**New Orleans, Louisiana, this 19th day of December, 2019.**

_____
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**